STATE OF MINNESOTA                                        DISTRICT COURT

COUNTY OF HENNEPIN                                 FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| Under Construction Services, Inc., | Case Type: #3 Contract |
| | Court File No. _____ |
| Plaintiff, | The Honorable _____ |
| v. | |
| Philadelphia Indemnity Insurance Company, a/k/a Philadelphia Insurance Companies, | **SUMMONS** |
| Defendant. | |

THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to answer the complaint of plaintiff in the above-entitled action, which complaint is hereto attached and herewith served upon you, and to serve a copy of your Answer to the said complaint on the plaintiff's attorney at Suite 1200, The Colonnade, 5500 Wayzata Boulevard, Minneapolis, Minnesota 55416, within twenty (20) days after the service, and if you fail to answer the said complaint within the time aforesaid, the plaintiff in this action will apply to the court for the relief demanded in said complaint.

Rule 114 of the Minnesota General Rules of Practice provides that alternative dispute resolution (ADR) must be considered for nearly all civil cases filed in district court. Upon receipt of the completed Certificate of Representation and Parties required by Rule 104 of the General Rules of Practice, the court administrator will provide the attorneys of record and any unrepresented parties with information about ADR processes available to the county and the availability of a list of neutrals who provide ADR services in that county. After the filing of this action, the parties are required to promptly confer regarding case management issues, including the selection and timing of

SCANNED
FEB 0 9 2009
U.S. DISTRICT COURT MPLS

EXHIBIT
A

the ADR process. Following this conference ADR information shall be included in the informational statement required by Rules 111.02 and 304.02 of the Minnesota General Rules of Practice.

BERNICK, LIFSON, GREENSTEIN
GREENE & LISZT, P.A.

Dated: 1/16/08

David K. Nightingale #148088
Daniel B. Greenstein #142104
5500 Wayzata Boulevard, Suite 1200
Minneapolis, Minnesota 55416-1270
(763) 546-1200
(763) 546-1003 (fax)

*Attorneys for Plaintiff*

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| Under Construction Services, Inc., | Case Type: #3 Contract |
| | Court File No. _____ |
| Plaintiff, | The Honorable _____ |
| v. | |
| | **COMPLAINT** |
| Philadelphia Indemnity Insurance Company, a/k/a Philadelphia Insurance Companies, | |
| Defendant. | |

For its Complaint against the Defendant, the Plaintiff sets forth and alleges as follows:

## INTRODUCTION

Plaintiff is assignee of claims of six (6) associations that purchased property and casualty insurance from Defendant Philadelphia Insurance Company. The associations' policies provide that defendant shall pay the amount that the policyholder actually spent that is necessary to repair or replace damaged property. Plaintiff is the general contractor retained by each of the associations to repair damaged property subject to the insurance policies issued by defendant. Plaintiff duly performed its obligations to the associations for the repairs, and a charge for overhead and profit was included and incurred by the associations, and charged to them by plaintiff as part of the actual cost. Defendant has refused to pay these costs.

## PARTIES

1.   Plaintiff is a Minnesota corporation with its principle place of business located at 2100 Summer Street N.E., Suite 280, Minneapolis, Minnesota 55413.

2.   Defendant is a Pennsylvania corporation with a principle place of business located at One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania.

## JURISDICTION AND VENUE

3.     This Court enjoys subject matter jurisdiction over the claims asserted by reason of

Minn. Stat. § 484.01.

4.     This Court enjoys personal jurisdiction over defendant and this matter is properly

venued in Hennepin County under Minn. Stat. §542.09 as the contract was formed in Minnesota

and the cause of action or some part thereof has arisen in the County of Hennepin.

## STATEMENT OF THE CASE

5.     Plaintiff is the assignee of a claim against the Defendant by the following non-

profit associations:

      a.  Cranberry Meadows Clubhome Association, Inc. – Claim Nos.
          PHCO07060271643 and PHPK276249

      b.  Nature's Run Townhome Association, Inc. – Claim No. PHCO08050326557

      c.  The Pointe Village Homes Association, Inc. – Claim No. PHCO08050327656

      d.  The Pointe Court Homes Association, Inc. – Claim No. PHCO08050327662

      e.  Timber Wolf Hollow Association, Inc. – Claim No. PHCO08060330114

      f.  Natchez Place Condominium Association, Inc. – Claim No. PHCO08070335493

6.     The above six (6) non-profit associations shall be collectively and individually

referred to herein as the "Associations" and the listed claims shall be collectively and

individually referred to as the "Claims".

7.     During the calendar year 2007 and 2008, each of the Associations carried their

mandated master policy of insurance with the Defendant.

8.     Each of the Associations' policies of insurance provided for property coverage

with a Guaranteed Replacement Cost Endorsement.

9.      Each of the Associations' policies of insurance provided that in the event of a "loss" to Covered Property covered by the Coverage form, the insurer at its option must either: (1) Pay the value of lost or damaged property; (2) Pay the cost of repairing or replacing the lost or damaged property; (3) Take all or any part of the property at an agreed or appraised value; or (4) Repair, rebuild or replace the property with other property of like kind and quality.

10.      Each of the Associations had an insured loss on or about the following dates:
   a.  Cranberry Meadows Clubhome Association, Inc. – May 23, 2007; May 31, 2008
   b.  Nature's Run Townhome Association, Inc. – August 13, 2007
   c.  The Pointe Village Homes Association, Inc. – May 25, 2008
   d.  The Pointe Court Homes Association, Inc. – May 25, 2008
   e.  Timber Wolf Hollow Association, Inc. – May 25, 2008
   f.  Natchez Place Condominium Association, Inc. – May 31, 2008

11.      Each Association timely filed its Claim with the insurer and fulfilled the requirements under its policy of insurance. In each instance, the Defendant elected to pay the cost of repairing or replacing the lost or damaged property pursuant to the policies of insurance and the Claims.

12.      Each Association contracted with Plaintiff for Plaintiff to undertake all of the repairs covered under the Claims, as more fully set forth in the specific Claims filed with the Defendant.

13.      The custom and course of dealing in the industry is that under replacement coverage insurance where there are three or more trades involved the insurer must pay 10% of the claim amount as overhead and 10% of the claim amount as profit (together "O & P").

14.      The repairs of the damage sustained by each Association under the Claims listed above have been substantially completed by the Plaintiff.

15.     The repairs undertaken by each Association, under the Claims listed above and, through the efforts of the Plaintiff as general contractor, required three or more trades to complete.

16.     For an insurance policy with replacement cost coverage, where a general contractor and three or more trades are required for the repairs to the insured's property, the replacement policy coverage includes a provision for payment of 10% of the total costs for overhead and 10% of the total costs for profit.

17.     Exhibit A attached hereto identifies each of the Associations who have assigned their Claims to the Plaintiff, the Defendant's estimates of repair costs, the start and substantial completion dates as well as the amounts of overhead and profit, paid or unpaid on each specific Claim.

18.     Plaintiff's agreement with each of the Associations was that it would perform all of its duties as the general contractor for the repair project in exchange for the 10% overhead and 10% profit which was to be paid by the Defendant under the Association's policy of insurance.

**COUNT I**
**BREACH OF CONTRACT**

19.     Paragraphs 1 through 18 are incorporated by reference as though set forth in full.

20.     Defendant Philadelphia entered into and issued standard forms of property and casualty insurance policy contracts with the associations that obligated Philadelphia to comply with Minnesota law regarding the issuance of property insurance policies and the handling of claims.

21.     Each of the Associations' insurance policies were valid and enforceable at the time of each claim submitted to defendant as set forth above, and at the time of the adjustment of each claim by defendant.

22.     Each of the Associations' claims pursuant to their property and casualty insurance policy contracts insurance policies as identified above have been duly assigned to Plaintiff Under Construction Services, Inc.

23.     At all times relevant hereto all conditions precedent to Defendant Philadelphia's liability under the standardized form insurance policies were performed, including the payment by the Associations of all premiums necessary to keep the policies in effect.

24.     Defendant Philadelphia materially breached the terms of the standardized insurance contract with the Associations by refusing to pay the amount necessary to repair the damaged property, and specifically refused to pay any amounts for overhead and profit costs incurred by the contractor.

25.     Pursuant to its Claims filed May 23, 2007, Cranberry Meadows Clubhome Association, Inc. was paid for repairs undertaken to its property totaling $308,19.07.

26.     The above repair work to the Association's property was substantially completed by plaintiff on or about August 18, 2008.

27.     Plaintiff, as assignee of Cranberry Meadows Clubhome Association, Inc., is due 10% of the repair costs for overhead and 10% of the repair costs for profit, totaling $56,298.14.

28.     Plaintiff, as assignee of Cranberry Meadows Clubhome Association, Inc. was paid the sum of $28,149.07 by the Defendant, leaving a balance due of $28,149.07.

29.     Pursuant to its Claims filed May 31, 2008, Cranberry Meadows Clubhome Association, Inc. was paid for repairs totaling $550,222.50.

30.     The above repair work to the Association's property was substantially completed by plaintiff on or about August 18, 2008.

31.     Plaintiff, as assignee of Cranberry Meadows Clubhome Association, Inc., is due 10% of the repair costs for overhead and 10% of the repair costs for profit, totaling $106,044.50.

32.     Plaintiff, as assignee of Cranberry Meadows Clubhome Association, Inc. was paid the sum of $53,022.25 by the Defendant, leaving a balance due of $53,022.25.

33.     Pursuant to its Claims filed August 13, 2007, Nature's Run Townhome Association, Inc. was paid for repairs undertaken to its property totaling $416,010.90.

34.     The above repair work to the Association's property was substantially completed by plaintiff on or about August 8, 2008.

35.     Plaintiff, as assignee of Nature's Run Townhome Association, Inc., is due 10% of the repair costs for overhead and 10% of the repair costs for profit, totaling $83,202.18, no part of which has been paid.

36.     Pursuant to its Claims filed May 25, 2008, The Pointe Village Homes Association, Inc., was paid for repairs undertaken to its property totaling $1,154,941.10.

37.     The above repair work to the Association's property was substantially completed by plaintiff on or about September 4, 2008.

38.   Plaintiff, as assignee of The Pointe Village Homes Association, Inc., is due 10% of the repair costs for overhead and 10% of the repair costs for profit, totaling $230,988.22, no part of which has been paid.

39.   Pursuant to its Claims filed May 25, 2008, The Pointe Court Homes Association, Inc., was paid for repairs undertaken to its property totaling $1,499,518.90.

40.   The above repair work to the Association's property was substantially completed by plaintiff on or about September 11, 2008.

41.   Plaintiff, as assignee of The Pointe Court Homes Association, Inc., is due 10% of the repair costs for overhead and 10% of the repair costs for profit, totaling $299,903.78, no part of which has been paid.

42.   Pursuant to its Claims filed May 25, 2008, Timber Wolf Hollow Association. Inc. was paid for repairs totaling $115,696.40.

43.   The above repair work was substantially completed by plaintiff on or about August 25, 2008.

44.   Plaintiff, as assignee of Timber Wolf Hollow Association, Inc., is due 10% of the repair costs for overhead and 10% of the repair costs for profit, totaling $23,139.28, no part of which has been paid.

45.   Pursuant to its Claims Natchez Place Condominium Association, Inc. was paid for repairs totaling $53,594.05.

46.   The above repair work was substantially completed by plaintiff on or about September 24, 2008.

47.     Plaintiff, as assignee of Natchez Place Condominium Association, Inc., is due 10% of the repair costs for overhead and 10% of the repair costs for profit, totaling $10,718.81, no part of which has been paid.

48.     As a direct and proximate cause of defendant's breach of these contracts, Under Construction Services, Inc and the Associations have been damaged in an amount in excess of Fifty Thousand Dollars ($50,000.00).

## COUNT II

### Violation of Minnesota Uniform Deceptive Trade Practice Act,
### Minn. Stat. § 325D.43-.48

49.     Paragraphs 1 through 48 are incorporated by reference as though set forth in full.

50.     The Minnesota Uniform Deceptive Trade Practices Act, Chapter 325D of the Minnesota Statutes, prohibits the use of deceptive trade practices in the course of business.

51.     In the course of its business, Defendant engaged in one or more acts characterized as "deceptive trade practices" pursuant to Minn. Stat. § 325D.43-.48.  Specifically by way of example Defendants has violated this statute by:

    a.  representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have in violation of Minn. Stat. § 325D.44(5); and

    b.  representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another in violation of Minn. Stat. § 325D.44(7); and

c.   engaged in any other conduct which similarly creates a likelihood of confusion or of misunderstanding in violation of Minn. Stat. § 325D.44(13)."

52.   By representing that the policy included repayment of OAP, all the while knowing it intended not to pay OAP, Defendant made a representation covered by the Act. Philadelphia subsequently violated the Minnesota Uniform Deceptive Trade Practices Act by unilaterally refusing to pay OAP for the Associations and Plaintiff.

## COUNT III

### Violation of Minnesota Prevention of Consumer Fraud Act,
### Minn. Stat. §§ 325F.68-.70

53.   Paragraphs 1 through 52 are incorporated by reference as though set forth in full.

54.   The Minnesota Prevention of Consumer Fraud Act prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others reply thereon in connection with the sale of any merchandise..." Minn. Stat. § 325F.69.

55.   Defendant violated the Minnesota Consumer Fraud Act by representing that its insurance contacts with Plaintiff and the Class included an OAP allowance in connection with a covered loss, and then refusing to pay the OAP.

56.   As a direct and proximate cause of defendant's violation of the The Minnesota Prevention of Consumer Fraud Act, the Associations and Plaintiff Under Construction Services, Inc. have been damaged in an amount in excess of Fifty Thousand Dollars ($50,000.00).

## COUNT IV

### Unjust Enrichment

57.   Paragraphs 1 through 56 are incorporated by reference as though set forth in full.

58.    Defendant has benefited from the goods and services provided by plaintiff and for which the plaintiff has not been fully paid by defendant, and defendant has thereby enriched itself at the expense of the plaintiff.

59.    Defendant has been unjustly enriched to the detriment of plaintiff in an amount in excess of Fifty Thousand Dollars ($50,000.00).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, for himself and as assigned of the claims of the Associations, request a judgment against Defendant for the following:

60.    A determination, adjudication and declaration of Plaintiff's and the Associations' rights and Defendant's obligations under the contract and in particular those related to the valuation of claims;

61.    An award of damages to Plaintiff for Defendant's breach of contract, violations of the Minnesota Deceptive Trade Practices Act, violations of the Minnesota Prevention of Consumer Fraud Act in an amount to be determined at trial;

62.    An award to Plaintiff of both pre and post-judgment interest as allowed by law;

63.    An Order awarding Plaintiff's counsel all reasonable attorneys' fees and costs; and

64.    Such other and further relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

Dated: 1/16/09

BERNICK, LIFSON, GREENSTEIN
GREENE & LISZT, P.A.

David K. Nightingale #148088
Daniel B. Greenstein, #142104
5500 Wayzata Boulevard, Suite 1200
Minneapolis, Minnesota 55416-1270
(763) 546-1200
(763) 546-1003 (fax)

*Attorneys for Plaintiff*

## ACKNOWLEDGEMENT REQUIRED BY MINN. STAT. § 549.211

The undersigned hereby acknowledges that pursuant to Minn. Stat. § 549.211, subd. 3,

sanctions may be imposed upon the attorneys, law firms, or parties if the court should find

that the undersigned violated Minn. Stat. § 549.211, subd. 2.

BERNICK, LIFSON, GREENSTEIN
GREENE & LISZT, P.A.

Date: 1/16/09

By:
Daniel B. Greenstein #142104

*Complaint
Under Construction Services v
Philadelphia Indemnity Insurance Co.
Page 11 of 11*